UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA S. BLACKWELL,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,
_____/

Case No. 1:16-cv-592

HON. JANET T. NEFF

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner). Plaintiff seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-two years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.53, 162, 177.) She has completed high school, and attended one year of college. (PageID.88.) Plaintiff has also previously worked as a data entry clerk. (PageID.125.) In addition to the application presently before this Court, Plaintiff has applied for DIB and SSI on a number of other occasions, including July 2008, January and February 2009, and January 2010, all

of which resulted in unfavorable decisions and were not pursued beyond the administrative level. In the last application, ALJ Donna Grit issued her unfavorable decision on November 10, 2011. The Appeals Council declined review on May 22, 2013. (PageID.56.)

Plaintiff filed the instant application only a few weeks later, on June 18, 2013, alleging disability beginning November 11, 2011,[1] due to diabetes, COPD, anxiety, depression, arthritis, chronic pain on left arm, cervical spine fusion surgery, and carpal tunnel syndrome in the right upper extremity. (PageID.162–163, 177–178, 268–279.) Plaintiff's applications were denied on October 10, 2013, after which time she requested a hearing before an ALJ. (PageID.198–223.) Shortly before the hearing, on November 4, 2014, Plaintiff amended her alleged onset date to October 1, 2012. (PageID.297.) On November 6, 2014, Plaintiff appeared with her counsel before ALJ Michael S. Condon for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.83–136.) In a written decision dated January 13, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.53–81.) On March 25, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.25–29.)

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[1] Administrative res judicata arising from the 2011 decision barred any onset of disability date before that decision. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993).

[2] 
1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Condon determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date. (PageiD.59.) At step two, the ALJ determined Plaintiff had the severe impairments of: (1) asthma/chronic obstructive pulmonary disease (COPD); (2) type I diabetes mellitus with peripheral neuropathy; (3) bilateral carpal tunnel syndrome, s/p right carpal tunnel release; (4) s/p left wrist infection with surgeries; (5) adjustment disorder with mixed anxiety and depressed mood; (6) history of anxiety and depression; and (7) history of alcohol abuse/dependence. The ALJ further found Plaintiff had a number of non-severe impairments. (PageID.59–62.) At the

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.62–64.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She could lift and carry 20 pounds occasionally and 10 pounds frequently; and in an 8-hour workday with normal breaks, she could stand and walk for a total of about 6 hours and could sit for a total of about 6 hours. She could do no constant pushing or pulling with the upper extremities; could not climb ladders, ropes or scaffolds; could frequently climb ramps and stairs; could frequently balance, stoop, kneel, crouch and crawl; could frequently reach, handle, finger and feel; should not operate leg or foot controls with either lower extremity; should have no more than occasional exposure to temperature extremes, wetness, vibration, fumes, odors, dusts, gases, and poorly ventilated areas; and should have no more than occasional exposure to hazards, including working at unprotected heights and around dangerous moving machinery. She would be limited to doing unskilled work and work that could be learned in 30 days or less based on education and on other mental limitations.

(PageID.64–65.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (PageID.73.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a cleaner / housekeeper (9,000 regional positions), inspector / packager (8,000 regional positions), and as an assembler / press operator (7,000 regional positions). (PageID.126–127.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.74.)

5

Accordingly, the ALJ concluded that Plaintiff was not disabled from October 1, 2012, the amended alleged disability onset date, through January 13, 2015, the date of decision. (PageID.74–75.)

## DISCUSSION

**1.    The ALJ's Evaluation of Dr. Gary Humphries' Opinions.**

In support of her application for benefits, Plaintiff submitted several statements to the Commissioner from Dr. Gary Humphries, M.D., her treating physician. The ALJ summarized several of these opinions in his evidence discussion but he did not, at that point, assign them any weight or express reasons for doubting the conclusions contained therein. After this evidence summary, the ALJ turned to a specific discussion of the medical opinions. There, the ALJ discussed Dr. Humphries' opinions as follows:

> However, we also have the opinion of Dr. Humphries, the claimant's treating physician, in Exhibits B3F, B4F p. 2, and B13F, that concludes the claimant is disabled. In Exhibit B3F, he notes poor concentration, but the mental health professionals at Arbor Circle repeatedly show thought processes within normal limits (Exhibit B21F pp. 7, 18). Dr. Humphries also notes her ongoing alcohol abuse (Exhibit B4F). Although he notes that carpal tunnel syndrome is noted to be mild, yet he also notes that she cannot work presumably due to mild carpal tunnel syndrome and neuropathy. The claimant did not appear to find those issues to be that limiting, although she did complain about the carpal tunnel syndrome. It is interesting to note that, in his June 2013 physical capacities assessment, Dr. Humphries believed the claimant able to frequently stand, walk, lift up to 50 pounds, bend and stoop (Exhibit B13F); however, the undersigned believes that to be a mistake on his part. He probably meant she could do none of those things except sit occasionally; therefore, this assessment really does not have much value. It was given as hypothetical number 4, but that hypothetical frankly does not make much sense based on Exhibit B13F. Therefore, it is given greatly reduced weight.

. . .

> Sections 404.1527 and 416.927 of the Regulations set forth the Social Security Administration's position on the weight to be accorded to the opinions of medical sources, including their conclusions of disability and imposed limitations. Generally, the opinion of a treating physician is entitled to controlling weight if such opinion is supported by objective medical findings, and is consistent with the other material evidence of record (SSR 96-2p). However, the undersigned does not find Dr. Humphries' findings of disability to be supported by his own records and the majority of the medical evidence of record.

(PageID.72–73.) Plaintiff claims that the ALJ's discussion of these statements violates the treating physician rule. The Court agrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.

*See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. Jan. 19, 2007).

The ALJ's discussion of Dr. Humphries' opinions contains several errors and omissions. First of all, while it is true the ALJ may have addressed all of Dr. Humphries' opinions, the excerpt quoted above shows the ALJ only gave a specific weight to the June 20, 2013, opinion, leaving it unclear what consideration he gave the remaining opinions. For example, while the ALJ addressed Dr. Humphries opinions' dated October 10 and 11, 2014, earlier in his summary of the medical evidence, he does not appear to have given it any further consideration later in his opinion discussion. Clearly the ALJ did not adopt these opinions, as they contain limitations much greater than those accounted for in the RFC. Moreover, these are not opinions, reserved to the Commissioner, stating that Plaintiff is disabled. These opinions are much more than that. Among other things, the doctor indicated Plaintiff would be off task for over thirty percent of the day, could only rarely lift only ten pounds, and never perform gross and fine manipulation. (PageID.609.) The ALJ, however, did not provide good reasons for not adopting these restrictions.

Furthermore, it does not appear that Dr. Humphries authored the opinion contained in Exhibit B4F. The index to the administrative record lists this document as originating from the Heartside Clinic, a practice different from Dr. Humphries' practice at the Grand Valley Medical Specialists. (PageID.22.) But even assuming Dr. Humphries' did author the opinion, such would still not alleviate the issues here. The ALJ references the opinion as one which notes Plaintiff's ongoing alcohol abuse. But this exhibit appears to be silent regarding Plaintiff's alcohol abuse. (PageID.436–439.) Finally, while it is true that Exhibit B4F notes that Plaintiff has mild carpal tunnel syndrome (PageID.436), the ALJ provides no support for his assertion Plaintiff did not find this condition to be that limiting. To the contrary, Plaintiff listed carpal tunnel syndrome as the first problem at the administrative hearing. (PageID.90.) She testified she needed to use both hands to

carry a gallon of milk. (PageID.91.) After three to four hours of her data entry work, she further testified that her hands would "lock up" and would be "shot" when she arrived home. (PageID.90.)

In sum, the Court finds the ALJ failed to articulate good reasons, supported by substantial evidence, for assigning less than controlling weight to Dr. Humphries' opinions. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance theron does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (noting that while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such questions must accurately portray the claimant's impairments). The Commissioner's attempt to provide reasons in support of the ALJ's decision is precisely the type of analysis the ALJ should have undertaken in the first place. Accordingly, this matter will be reversed and remanded to the Commissioner for further evaluation, including a reassessment of Dr. Humphries' opinions.

2.     **The ALJ's Step 2 Evaluation.**

Finally, Plaintiff claims that the ALJ should have found her neck and back pain to constitute severe impairments at step two of the sequential analysis. (PageID.1002.) She claims the ALJ ignored evidence that would lead to a conclusion that these were severe impairments.

At step two of the sequential disability analysis, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc.*

*Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error").

A review of the ALJ's decision reveals that he considered the entire record when assessing Plaintiff's claim. Furthermore, even if it is assumed that these conditions are severe impairments, Plaintiff has not shown how these impose on Plaintiff limitations greater than those recognized by the ALJ in his RFC determination. Accordingly, this claim of error is rejected.

### 3. Remand is Appropriate.

Plaintiff asks for an award of benefits. (PageID.1004.) While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also Brooks*, 531 F. App'x at 644. Evaluation of Plaintiff's claim requires the resolution of certain factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **VACATED** and

the matter **REMANDED** for further factual findings including, but not necessarily limited to, further evaluation of Dr. Humphries' opinions, pursuant to sentence four of 42 U.S.C. § 405(g).

A separate judgment shall issue.


Dated: May 8, 2017                                              /s/ Janet T. Neff
                                                                JANET T. NEFF
                                                                UNITED STATES DISTRICT JUDGE